UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **DARREN L. REAGAN** | : | **CIVIL ACTION NO. 2:17-cv-0807** |
| B.O.P. # 37109-177 | | **SECTION P** |
| **VERSUS** | : | **JUDGE SUMMERHAYS** |
| **WARDEN FCI OAKDALE** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a petition for writ of habeas corpus [doc. 7] filed pursuant to 28 U.S.C. § 2241 by Darren L. Reagan, who is proceeding *pro se* in this matter. Reagan is an inmate in the custody of the Bureau of Prisons and is currently incarcerated at the Federal Correctional Institution at Beaumont, Texas.[1] The government has filed a response and the petitioner has filed a reply thereto. Docs. 36, 37.

This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636. For the reasons stated below, **IT IS RECOMMENDED** that the petition be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

I.
BACKGROUND

Following a jury trial Reagan was convicted in the United States District Court for the Northern District of Texas of one count of conspiracy to commit extortion and one count of aiding

---

[1] At the time Reagan filed this petition, he was incarcerated at the Federal Correctional Institution at Oakdale, Louisiana. As this court has explained to him, our jurisdiction over his petition vested at the time of filing and is not destroyed by his subsequent transfer. Doc. 18, p. 2; *see Lee v. Wetzel*, 244 F.3d 370, 373–75 and n. 5 (5th Cir. 2001) and *Griffin v. Ebbert*, 751 F.3d 288, 290–91 (5th Cir. 2014).

and abetting extortion, in violation of 18 U.S.C. § 1951 ("Hobbs Act extortion"). *See United States v. Hill*, No. 3:07-cr-0289, docs. 1, 1004 (N.D. Tex. Mar. 23, 2010). On March 23, 2010, he was sentenced to two concurrent terms of 168 months' imprisonment. *Id.* at doc. 1294. The convictions relate to Reagan's involvement, as chairman and CEO of the Black State Employees Association of Texas ("BSEAT") and the BSEAT Community Development Corporation ("BSEAT CDC") in an illegal kickback scheme "related to attempts by two housing developers . . . to obtain public financing, zoning clearance, and political support for their rival housing development plans" in Dallas, Texas, and involving, *inter alia*, Dallas City Council member Donald Hill and Dallas City Planning and Zoning Commission member D'Angelo Lee. *United States v. Reagan*, 725 F.3d 471, 477 (5th Cir. 2013).

The United States Court of Appeals for the Fifth Circuit affirmed Reagan's conviction and sentence on August 2, 2013. *Id.* at 481–94. Reagan did not file a petition for writ of certiorari in the United States Supreme Court and instead pursued relief through a motion for a new trial. *See Reagan*, No. 3:07-cr-0289, at doc. 1841. The trial court denied same and the Fifth Circuit affirmed the trial court's judgment. *Id.* at docs. 1884, 1905. Reagan also filed a motion to vacate under 28 U.S.C. § 2255, asserting numerous constitutional errors in his trial and appeal. *Reagan v. United States*, No. 3:14-cv-3420 (N.D. Tex. Aug. 21, 2017). The trial court denied same and construed Reagan's subsequent motions for relief from judgment and for a new trial as a successive § 2255 petition, which it transferred to the Fifth Circuit for authorization to file same. *Id.* at docs. 98, 150, 166. The Fifth Circuit dismissed the request for authorization in both cases due to Reagan's failure to comply and explain the grounds on which he was entitled to proceed. *Reagan v. United States*, No. 3:17-cv-2217, doc. 9 (N.D. Tex. Aug. 21, 2017); *Reagan v. United States*, No. 3:18-cv-1007, doc. 6 (N.D. Tex. Apr. 20, 2018).

Reagan also filed the instant petition for writ of habeas corpus in this court under 28 U.S.C. § 2241, asserting that he is actually innocent of the extortion convictions based on the Supreme Court's decision in *McDonnell v. United States*, 136 S.Ct. 2355 (2016). Doc. 7. He then sought multiple extensions to amend his complaint, which the court granted. Docs. 10, 12, 14, 16. On the fourth extension the court warned Reagan that there would be no further extension granted. Doc. 16. Reagan then moved to transfer the case based on his assignment to another Federal Correctional Institute. Doc. 17. The court denied the motion, for the reasons summarized under note 1, supra, and Reagan appealed the denial to the Fifth Circuit. Docs. 18–21. The Fifth Circuit dismissed the appeal for want of prosecution and this court ordered service on the respondents.[2] Docs. 27, 28. The government then filed a response in opposition to Reagan's petition. Doc. 36. Reagan has filed a reply, but only uses that filing to renew his request for transfer and to complain of prosecutorial misconduct and unethical conduct by his trial attorneys. Doc. 37.

## II.
## LAW & ANALYSIS

Habeas corpus petitions filed pursuant to 28 U.S.C. § 2241 are generally used to challenge the manner in which a sentence is executed. *See Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000). A motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 allows federal inmates to collaterally attack the legality of their convictions or sentences. *Cox v. Warden, Fed. Det. Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990). Here Reagan collaterally attacks his conviction, arguing that he has been convicted of a nonexistent offense under recent Supreme Court precedent.

---

[2] Reagan continues to dispute the court's refusal to transfer his case, through a complaint against the Fifth Circuit Clerk of Court and a motion to reinstate the appeal. Doc. 35, att. 1, pp. 1–4. The court reviewed his complaint and informed him that the matter had been handled in accordance with all applicable rules and that the case would not be reinstated due to his failure to remedy the default within 45 days of dismissal. *Id.* at 5. The record from the Fifth Circuit indicates that Reagan's appeal remains closed, despite attempts by Reagan in October and November 2018 to reopen the case. *See Reagan v. FCI Oakdale*, No. 18-30553 (5th Cir. May 2, 2018). Accordingly, the appeal has concluded and the petition is ripe for review by this court.

The savings clause of 28 U.S.C § 2255 permits a petitioner to seek habeas relief under § 2241 when the remedy provided under § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). "A § 2241 petition is not, however, a substitute for a motion under § 2255, and the burden of coming forward with evidence to show the inadequacy or ineffectiveness of a motion under § 2255 rests squarely on the petitioner." *Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir. 2001). The fact that a prior motion was unsuccessful, or that the petitioner is unable to meet the statute's second or successive requirement, does not make § 2255 inadequate or ineffective. *Id.* Instead, a petitioner wishing to proceed under the savings clause "must make a showing of both actual innocence and retroactivity." *Wilson v. Roy*, 643 F.3d 433, 435 (5th Cir. 2011). The petitioner meets this stringent burden by showing: (1) that his claim is based on a retroactively applicable Supreme Court decision establishing that he may have been convicted of a nonexistent offense, **and** (2) that his claim was foreclosed by circuit law at the time when it should have been raised in his trial, appeal, or first § 2255 motion. *Reyes-Requena v. United States*, 243 F.3d 893, 901–04 (5th Cir. 2001).

Reagan argues that he was convicted of nonexistent offenses based on *McDonnell*, supra. There the Court considered the definition of "official act" in the federal bribery statute, 18 U.S.C. § 201, and interpreted by reference to that statute for the Hobbs Act extortion and honest services fraud statutes under which McDonnell, the former governor of Virginia, was convicted. 136 S.Ct. at 2365, 2375.

Under the federal bribery statute, an official act is:

> any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit.

18 U.S.C. § 201(a)(3). The Court determined that the term implicated only a limited set of decisions or actions "involv[ing] a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." *McDonnell*, 136 S.Ct. at 2371–72. A broader reading, it reasoned, would cast "a pall of potential prosecution" over relationships between public officers and their constituents, raise due process concerns due to the potential for confusion and arbitrary or discriminatory enforcement, and potentially violate the principles of federalism by "involv[ing] the Federal Government in setting standards of good government for local and state officials." *Id.* at 2372–73 (internal quotations omitted). Accordingly, it ruled that the defendant's convictions, based on "official acts" encompassing only the facilitation of communication between private citizens and other public officials, were grounded in an overbroad reading of the statute and must be reversed. *Id.* at 2361–64, 2373–75.

The court faces three questions in determining whether Reagan can satisfy the savings clause through *McDonnell*: under the first prong, (1) whether *McDonnell*'s holding shows that Reagan may have been convicted of a nonexistent offense and (2) whether that holding is retroactively applicable; and under the second prong, (3) whether the claim was foreclosed by circuit law at the time when it could have been raised at trial, on appeal, or in a prior § 2255 motion. *Christopher v. Miles*, 342 F.3d 378, 382 (5th Cir. 2003). "The core idea is that the petitioner may have been imprisoned for conduct that was not prohibited by law." *Id.* (quoting *Reyes-Requena*, 243 F.3d at 903) (alterations omitted).

The first question requires determining whether the narrowed definition under *McDonnell* shows that Reagan was convicted of a non-existent offense. The court must look beyond any change in the law effected by the cited Supreme Court case and explore the merits of the

petitioner's claim. *Bell v. Keffer*, 458 Fed. App'x 361, 362 (5th Cir. 2012) (citing *Christopher*, 342 F.3d at 382–83). This requires examining the indictment and jury charges, in order to determine whether the jury was instructed on a legally deficient theory of liability and whether it could have convicted under same. *See Christopher*, 342 F.3d at 383–85.

The 166-page indictment in this matter identified several instances of alleged criminal conduct by Reagan and codefendants Hill and Lee relating to the charges of Hobbs Act extortion of housing developer James Fisher. The conspiracy charge involved defendants' use of BSEAT and BSEAT CDC "to create the illusion of minority community opposition to Developer's affordable housing projects," making extortionate demands on Developer for things of value, requiring Developer to enter into sham consulting agreements with BSEAT CDC to conceal the defendants' "expected or actual receipt of things of value from Developer," and the postponement of official votes on Developer's application in the city council and the zoning commission until Developer entered into the sham agreements and made the payments demanded. *Reagan*, No. 3:07-cr-289, at doc. 1, pp. 95–97. Under that charge, it was also alleged that Reagan, Hill, and Lee committed several overt acts in furtherance of the conspiracy. *Id.* at doc. 1, pp. 97–124. The aiding and abetting extortion charge incorporated all allegations set forth in the conspiracy charge and further alleged that Reagan and two codefendants aided, abetted, counseled, commanded, induced, and procured Hill and Lee's extortion of $22,500 from the developer. *Id.* at doc. 1, p. 125.

The jury charges described extortion as containing the following elements, which the government must prove beyond a reasonable doubt: (1) that the defendant obtained or attempted to obtain property from another, with that person's consent; and (2) that the defendant did so by

wrongful use of actual or threatened force, violence, or fear, or that the defendant did so under color of official right.[3] *Id.* at doc. 998, p. 22. The court then explained:

> "Wrongfully obtaining property under color of official right" is the taking or attempted taking by a public official of property not due to him or his office, whether or not the public official employed force, threats, or fear. The wrongful use of otherwise valid official power may convert dutiful action into extortion. In other words, if a public official accepts or demands property in return for promised performance or nonperformance of an official act, the official is guilty of extortion. This is true even if the official was already duty bound to take or withhold the action in question, or even if the official did not have the power or authority to take or withhold the action in question, if the victim reasonably believed that the official had that authority or power.

*Id.* at doc. 998, p. 23. It offered the example of campaign contributions, noting that contributions given in anticipation of favorable future action were "not extorted 'under color of official right' unless there was an explicit promise of favorable future action; that is, the receipt of a campaign contribution is taken 'under color of official right' only if the payment is made in return for an explicit promise or undertaking by the official to perform or not to perform an official act." *Id.* It further noted that a private citizen could only be guilty of conspiracy to commit extortion under color of official right if the extortion was intended to result in the receipt of money by a public official, and a public official was a knowing participant in the scheme. *Id.*

Courts have found jury instructions to be incompatible with *McDonnell* where, for example, they described "official action" as "any action taken . . . under color of official authority," which could "capture[] lawful conduct, such as arranging meetings or hosting events with constituents." *United States v. Silver*, 864 F.3d 102, 112, 118 (2d Cir. 2017). The charges in this case, however, spoke in terms of performance or nonperformance of an "official act" and not merely acts performed "under color of official authority." Regan fails to identify any other "official

---

[3] As the jury charge noted, the government and defendant stipulated that the third element – that the defendant's conduct interfered with or affected interstate commerce – had been met. *Id.* at doc. 998, p. 22.

act" on which Hobbs Act extortion could be found other than through votes taken on the development by the Dallas City Council and the Zoning Commission, based on the Hill and Lee's delay of same until they had been remunerated. Such votes undoubtedly satisfy the Court's "formal exercise of governmental power" requirement. *McDonnell*, 136 S.Ct. at 2372. Accordingly, Reagan shows no possibility that the convictions could have been based on a definition of extortion incompatible with *McDonnell*. Because he has not shown that the case suggests he was convicted of a nonexistent offense, he cannot satisfy the first prong of the savings clause and this court need not consider the case's retroactive applicability or whether the claim was foreclosed by circuit law during prior proceedings. We are therefore without jurisdiction to consider this petition.

## III.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. This dismissal does not bar the petitioner from seeking relief in the trial court through a successive Motion to Vacate. *See* 28 U.S.C. § 2255(h).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE this 27th day of December, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE